STATE OF NORTH CAROLINA v. CARRIE Y. TRAPP

No. 924SC163

(Filed 15 June 1993)

**Arrest and Bail § 64 (NCI4th); Searches and Seizures § 8 (NCI3d) — warrantless arrest — probable cause — information from informants — cocaine on defendant's person — motion to suppress properly denied**

The warrantless arrest of defendant was based on probable cause and was lawful, and the trial court did not err in denying defendant's motion to suppress cocaine found on her person subsequent to the arrest, where officers independently corroborated information received from confidential informants; the officers had personally verified every piece of information given them by the informants except whether defendant had accomplished her mission of hiding drugs on her person; the informants provided detailed information of the future action of third parties ordinarily not easily predicted; the officers had reasonable grounds to believe that the remaining unverified information, that defendant and her boyfriend sold drugs at a named address and that defendant did in fact conceal the drugs during transport, was likewise true; and, considering all the facts and circumstances within the officers' knowledge and based upon the practical considerations of every-

STATE v. TRAPP

[110 N.C. App. 584 (1993)]

day life, a reasonable person acting in good faith could reasonably believe that defendant was engaged in criminal activity.

**Am Jur 2d, Arrest §§ 22, 32, 44; Searches and Seizures §§ 63, 69.**

**What constitutes probable cause for arrest — Supreme Court Cases. 28 L. Ed. 2d 978.**

**What constitutes "reasonable grounds" justifying arrest of narcotics suspect without warrant under § 104(a) of Narcotics Control Act of 1956 (26 USC § 7607(2) ). 6 ALR Fed. 724.**

Appeal by defendant from judgments entered 16 September 1991 by Judge Gary E. Trawick in Onslow County Superior Court. Heard in the Court of Appeals 5 March 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Bryan E. Beatty, for the State.*

*Robert T. Hargett for defendant appellant.*

COZORT, Judge.

Defendant appeals from the trial court's order denying her motion to suppress evidence obtained after her warrantless arrest. Finding her arrest to be lawfully based on probable cause, we affirm.

Defendant was charged with possession of cocaine with intent to sell and deliver, possession of cocaine, misdemeanor possession of marijuana, maintaining a dwelling for controlled substances, and possession of drug paraphernalia. Defendant moved to suppress the evidence on the grounds of illegal search and seizure in violation of the United States Constitution and the North Carolina Constitution.

The State presented the following evidence at the suppression hearing. On 3 January 1991, Jacksonville Police Detective Donald Hines received a telephone call from a confidential informant advising him that Steven James, also known as "Caboobie," would be driving a gray, dented four-door vehicle from Jacksonville to Maysville to make a cocaine purchase that night. The informant further advised Detective Hines that upon returning to Jacksonville, James would go to 106 Circle Drive and then to the Triangle Motel. Jacksonville Police Detective Steve Selogy also received

information from a second confidential informant that drugs were being sold at 106 Circle Drive and that James and his girlfriend, defendant Carrie Trapp, lived at that address. The informant further advised Detective Selogy that defendant Trapp hid the drugs in her vagina while they were being transported.

Detectives Hines and Selogy set up surveillance on Highway 17. Detective Hines and Detective Suarez parked at a nearby church school. At approximately 10:45 that night, Detective Hines observed three people exit the vehicle matching the description given by the informant. The three people entered 106 Circle Drive. They later left that address and went to the Triangle Motel. Two people then left the Triangle Motel in the same vehicle. Detective Selogy followed the car and activated his blue lights. Detective Selogy, who was in a van, observed the female passenger, later identified as defendant Trapp, move close to the driver, later identified as James, and then saw the male driver put his hand over the female's lap as he was looking in the rearview mirror. The vehicle stopped in the church school parking lot. James consented to a search of his person and the vehicle; no contraband was found.

The officers transported James and defendant Trapp to the police station. At the station, defendant Trapp waived her *Miranda* rights and stated that she had swallowed three bags of marijuana because she was unable to hide the bags in her vagina. Lieutenant Robert Toth then obtained a search warrant for defendant's person. At the hospital, Detective Cynthia Douquet observed a doctor remove a plastic bag containing 1.6 grams of cocaine from defendant's vagina.

The trial court denied defendant's motion to suppress. In addition to finding facts in accordance with the State's evidence, the trial court found that the defendant was under arrest when she was taken to the police station. Based upon the findings of fact, the trial court concluded that the officers had probable cause to arrest the defendant in the parking lot, and that the officers had probable cause to obtain a search warrant based upon information supplied by the informant, the observation of the officers, and the statements of the defendant after her arrest. Following the denial of her motion to suppress, defendant entered into a plea bargain with the State wherein she entered a guilty plea to possession of cocaine. The State dismissed the remaining charges. In accordance with the plea agreement, the trial court sentenced defendant to two years in prison.

STATE v. TRAPP

[110 N.C. App. 584 (1993)]

On appeal, defendant argues that the trial court erred in deny-
ing her motion to suppress on the ground that the detectives did
not have probable cause to arrest her. Specifically, defendant argues
that the detectives justified the arrest solely on the basis of infor-
mation from a confidential informant whose reliability was not
established by the evidence. We find no error.

Our review of a denial of a motion to suppress is limited
to determining whether the trial court's findings of facts are sup-
ported by competent evidence, whether the findings of fact support
the conclusions of law, and whether the conclusions of law are
legally correct. *See State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d
618, 619 (1982). We agree with defendant that she was legally
seized in the church school parking lot. To determine " 'whether
a particular encounter constitutes a seizure, a court must consider
all the circumstances surrounding the encounter to determine
whether the police conduct would have communicated to a reasonable
person that the person was not free to decline the officers' requests
or otherwise terminate the encounter.' " *State v. Poindexter*, 104
N.C. App. 260, 265, 409 S.E.2d 614, 616 (1991), *disc. review denied*,
330 N.C. 616, 412 S.E.2d 93 (1992) (quoting *Florida v. Bostick*, 501
U.S. ---, ---, 115 L.Ed.2d 389, 401-02 (1991)). Detective Hines
testified, and the trial court properly found, that defendant was
not free to leave after the vehicle was stopped.

At the time of the arrest, the detectives did not have a search
warrant. A warrantless arrest is lawful if based upon probable
cause and permitted by state law. *State v. Mills*, 104 N.C. App.
724, 728, 411 S.E.2d 193, 195 (1991). An officer may make a war-
rantless arrest of any person the officer has probable cause to
believe has committed a criminal offense in the officer's presence.
N.C. Gen. Stat. § 15A-401(b)(1) (Cum. Supp. 1992). "Facts establishing
probable cause must be sufficient to justify the issuance of an
arrest warrant even though one has not been requested prior to
the arrest." *Mills*, 104 N.C. App. at 728, 411 S.E.2d at 195. " 'Prob-
able cause exists where "the facts and circumstances within [the
officers'] knowledge and of which they had reasonable trustworthy
information [are] sufficient in themselves to warrant a man of
reasonable caution in the belief that" an offense has been or is
being committed.' " *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d
140, 146 (1984) (quoting *Brinegar v. United States*, 338 U.S. 160,
175-76, 93 L.Ed. 1879, 1890 (1949)). "[P]robabilities . . . are not
technical; they are the factual and practical considerations of every-

day life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Id.*

In *Illinois v. Gates*, 462 U.S. 213, 76 L.Ed.2d 527, *reh'g denied*, 463 U.S. 1237, 77 L.Ed.2d 1453 (1983), the United States Supreme Court rejected the rigid two-prong test requiring affidavits supporting a warrant to demonstrate (1) the basis of the informant's knowledge, and (2) past reliability of the informant. Although the two factors remain highly relevant, *id.* at 230, 76 L.Ed.2d at 543, the Court determined that the courts must review the "totality of circumstances" in determining whether information received from a confidential informant properly forms the basis of probable cause to arrest or search. *Id.* at 238, 76 L.Ed.2d at 548. The Court emphasized the importance of police corroboration, citing *Draper v. United States*, 358 U.S. 307, 3 L.Ed.2d 327 (1959). In *Draper*, an informant reported that the defendant would be arriving in Denver by train from Chicago on one of two days and that he would be carrying an amount of heroin. The informant described defendant's physical appearance, including the defendant's clothing, and stated that he would be walking very fast. The Court concluded that there was probable cause to arrest defendant because the officer observed a man matching the informant's description exit a train from Chicago and walk very quickly toward the station exit. The Court noted that the officer

> had personally verified every facet of the information given him by [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of [the informant's] information being thus personally verified, [the officer] had "reasonable grounds" to believe that the remaining unverified bit of [the informant's] information—that Draper would have the heroin with him—was likewise true.

*Id.* at 313, 3 L.Ed.2d at 332.

The *Gates* Court noted that the showing of probable cause therein was as compelling as in *Draper*. In *Gates*, police officers received an anonymous letter indicating that the defendants purchased drugs in Florida and transported them back to Illinois in the family car. Drug Enforcement Agents tracked the defendants' activities which substantially complied with the details set forth in the anonymous letter. In finding that the magistrate had prob-

able cause to issue a search warrant, the Court noted that the facts obtained through investigation suggested that defendants were involved in drug trafficking. Specifically, the Court commented that Florida is known as a source of narcotics and that defendant husband's brief trip to Florida was as consistent with a drug run as it was an ordinary vacation trip. *Id.* at 243, 76 L.Ed.2d at 551. The Court further noted that the anonymous letter had been corroborated by independent police investigation: "The corroboration of the letter's predictions that the Gateses' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true." *Id.* at 244, 76 L.Ed.2d at 552. Finally, the Court found it important that

> the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letterwriter's accurate information as to the travel plans of each of the Gateses was of a character likely obtained only from the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities.

*Id.* at 245, 76 L.Ed.2d at 552-53.

In *State v. Riggs*, 328 N.C. 213, 400 S.E.2d 429 (1991), the North Carolina Supreme Court addressed the sufficiency of affidavits to support a magistrate's finding of probable cause and issuance of a warrant. The affidavits included statements by the submitting law enforcement officer that the relevant information had been received from a reliable informant. On voir dire, the arresting officer testified that he did not consider the informant to be reliable. The officer's opinion apparently was based on his mistaken belief that an informant was "reliable" only if he had been involved in at least two prior controlled purchases of illegal drugs. In concluding that the magistrate had probable cause to issue the warrant based upon the officer's affidavits, our Supreme Court stated:

In showing that information is reliable for purposes of obtaining a search warrant, the State is not limited to certain narrowly defined categories or quantities of information. *What is popularly termed a "track record" is only one method by which a confidential source of information can be shown to be reliable for purposes of establishing probable cause.* The clearest illustration of this fact is found in *Illinois v. Gates*, which has been accepted by this Court as setting the appropriate standard for showing probable cause under both the federal and state constitutions.

*Id.* at 219, 400 S.E.2d at 433 (citations omitted) (emphasis added).

Applying these principles to this case below, we find that under the totality of the circumstances the detectives had probable cause to arrest defendant in the parking lot. The evidence shows that Detective Hines received a telephone call from a confidential informant that Steven James would be driving from Jacksonville to Maysville to make a cocaine purchase on 3 January 1991. The informant stated that James would return to Jacksonville and go to 106 Circle Drive and then to the Triangle Motel. Detective Selogy received information from a second source that James and his girlfriend Carrie Trapp were selling drugs at 106 Circle Drive. The informant also told Detective Selogy that James would purchase the drugs and defendant would hide them in her vagina. Although Detective Hines personally had not spoken to the informant prior to 3 January 1991, the informant had previously informed the Jacksonville police that drugs were being sold at 106 Circle Drive. While under surveillance, the informant had twice gone into the residence at 106 Circle Drive. In addition to the two informants who contacted Detectives Hines and Selogy, Lieutenant Toth testified that "there were others [informants] prior to that night that stated that Ms. Trapp was in fact concealing drugs for Mr. James in her vagina."

Based upon the information received, the detectives set up surveillance. At approximately 10:45 p.m., the detectives observed a car matching the description given by one of the informants arrive at 106 Circle Drive. Three people exited the vehicle and entered the apartment. The detectives later observed the vehicle leaving the apartment and traveling south on Highway 17. The detectives proceeded to the Triangle Motel where they observed the same vehicle that had been parked outside 106 Circle Drive.

STATE v. TRAPP

[110 N.C. App. 584 (1993)]

The detectives observed the vehicle leave the motel and turn north on Highway 17. At that point, Detective Selogy activated his blue light. Detective Selogy observed the female passenger move close to the male driver and the driver put his hand in her lap as he frequently checked the rearview mirror. The vehicle stopped in the parking lot. The driver and passenger were identified as Steven James and defendant Carrie Trapp.

As in *Draper* and *Gates*, the officers independently corroborated the information received from the confidential informants. The officers had personally verified every piece of information given them by the informants except whether defendant had accomplished her mission of hiding drugs on her person. The informants provided detailed information of the future action of third parties ordinarily not easily predicted. We find that the officers had reasonable grounds to believe that the remaining unverified information, that defendant and her boyfriend sold drugs at 106 Circle Drive and that defendant did in fact conceal the drugs during transport, was likewise true. Although each piece of information, standing alone, might not have been sufficient to establish probable cause, considering all the facts and circumstances within the officers' knowledge, and based upon the practical considerations of everyday life, we find that a reasonable person acting in good faith could reasonably believe that defendant was engaged in criminal activity. *See Mills*, 104 N.C. App. at 729, 411 S.E.2d at 196. Accordingly, we conclude that the warrantless arrest of defendant was lawful as based upon probable cause. The trial court did not err in denying defendant's motion to suppress.

Affirmed.

Judges EAGLES and WYNN concur.