STATE OF NORTH CAROLINA v. MARY ALICE PITTMAN

No. 9218SC1204

(Filed 7 September 1993)

**Searches and Seizures § 12 (NCI3d)— lawful stop of defendant at train station—lawful investigatory stop of car—unlawful search of person—suppression of cocaine**

Where defendant and a man were seen talking in a train station by two drug interdiction officers; defendant and the man parted when they noticed that they were being watched by the officers; one of the officers stopped and questioned defendant while the second officer stopped and questioned

the man to whom she had been speaking; defendant showed the officer her train ticket, and both defendant and the man told officers that they were travelling alone and did not know each other; both consented to a search of their bags, but no drugs or contraband were discovered by the searches; defendant and the man thereafter left the train station in the same car; the officers had a uniformed officer stop the car and called a female officer to the scene; defendant refused to consent to a search; the female officer took defendant to the police station and searched her person; and the search uncovered two bags of cocaine, it was *held* that (1) the first stop of defendant at the train station was consensual and did not constitute a seizure, (2) the stop of the car was a lawful investigatory stop pursuant to a reasonable suspicion of criminal activity based on discrepancies between defendant's statements and her actions, and (3) the search of defendant's person was not based on probable cause and was unlawful. Therefore, the trial court should have granted defendant's motion to suppress evidence of the cocaine discovered by the search.

**Am Jur 2d, Searches and Seizures §§ 70, 83.**

Judge MCCRODDEN concurring in the result.

Appeal by defendant from judgment entered 30 June 1992 by Judge Howard R. Greeson in Guilford County Superior Court. Heard in the Court of Appeals 8 July 1993.

A motion to suppress the evidence of cocaine found upon the defendant's person was filed 4 September 1991, and a hearing was held 30 June 1992. Defendant's motion to suppress was denied and defendant pled guilty to the offense and received a seven-year prison term, subject to her right to appeal the suppression issue.

*Attorney General Michael F. Easley, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

*John Bryson for defendant-appellant.*

ORR, Judge.

The facts, as determined by the lower court, are that on 19 April 1991, Officers J.M. Ferrell and J.A. Gunn were at the Amtrak railroad station in High Point patrolling as part of a drug interdiction operation. At 1:30 a.m., the officers observed the defendant,

Mary Alice Pittman, and a man speaking. Upon noticing that they were being watched by the two officers, defendant and the man parted company. Officer Gunn stopped the defendant, and Officer Ferrell stopped the man with whom defendant was seen. The two were stopped approximately twenty feet apart. Defendant showed Officer Gunn a train ticket bearing the name A. Reynolds and stated that she was travelling alone and did not know the man with whom she had been seen. During the conversation, Officer Gunn noticed the defendant was constantly looking over at the man and Officer Ferrell. Defendant consented to a search of her bag. No drugs or contraband were discovered by the search. Meanwhile, Officer Ferrell spoke with the man who had been observed with the defendant. The man claimed to be travelling alone and said he did not know the defendant. The man consented to a search of his bag, and this search was also negative.

After Officer Ferrell ended his conversation with the man, a Honda automobile pulled up to the train station, and the man put his bag in the trunk. The man then motioned to the defendant to approach the car and he placed her bag in the trunk and the two of them got in the car and left. Officers Gunn and Ferrell compared the information they had gathered from the defendant and the man, noting particularly that both said they were travelling alone and did not know the other. When the officers observed the two leaving in the same car, their suspicions were aroused. Officers Gunn and Ferrell followed the car and had a uniformed police car stop the Honda. Before speaking to the defendant a second time, a call was made for a female officer to go to the scene. Officer Gunn asked the defendant to get out of the car and asked her why she had misrepresented that she was travelling alone as well as several other questions. The officers requested to search the defendant, and she refused. The female officer, Sherry Byrum, had arrived and was instructed to conduct a search of defendant's person. Because of the hour, defendant was taken to the police station where the search was conducted in the ladies public rest room. The search uncovered two bags of cocaine.

The issue on appeal is whether the lower court committed prejudicial error by denying the defendant's motion to suppress evidence seized in violation of the defendant's rights as guaranteed by the United States Constitution, the North Carolina Constitution, and N.C. Gen. Stat. § 15A-974. Defendant makes three contentions in support of her appeal.

First, defendant claims that the initial encounter between herself and the police at the train station was a seizure without reasonable suspicion. Recently, the United States Supreme Court has reiterated that police officers may approach individuals in public places "to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick*, 501 U.S. ---, ---, 115 L. Ed. 2d 389, 396 (1991). The Court further explains that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Id.* at ---, 115 L. Ed. 2d at 398. Such encounters are considered consensual by the Court and no reasonable suspicion is necessary. *Id.* This Court has found that "[c]ommunications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment." *State v. Thomas*, 81 N.C. App. 200, 205, 343 S.E.2d 588, 591, *disc. review denied*, 318 N.C. 287, 347 S.E.2d 469 (1986) (quoting *State v. Perkerol*, 77 N.C. App. 292, 298, 335 S.E.2d 60, 64 (1985), *disc. review denied*, 315 N.C. 595, 341 S.E.2d 36 (1986)). In the case *sub judice*, defendant was approached by only one clearly identified police officer at the train station who merely asked her a few questions. Defendant voluntarily gave Officer Gunn her train ticket and consented to the search of her bag. Because of the consensual nature of the encounter, defendant's argument that this encounter constituted a seizure is without merit.

The second contention defendant makes is that the stop of the car in which defendant was a passenger was an arrest without probable cause. In support, defendant asserts that because she had already been questioned once, there was no other investigative work to be done; therefore, the second stop was an arrest. The State asserts that defendant lacks standing to challenge the stop of the vehicle. However, the State is precluded from raising the argument of lack of standing on appeal because it failed to raise lack of standing to defeat the Fourth Amendment claim at the suppression hearing in the lower court. *State v. Cooke*, 306 N.C. 132, 138, 291 S.E.2d 618, 621-22 (1982).

This Court has found that "[i]t is well-settled law that a police officer may make a brief investigative stop of a vehicle if justified by specific, articulable facts giving rise to reasonable suspicion of illegal activity." *State v. Reid*, 104 N.C. App. 334, 342, 410 S.E.2d 67, 71 (1991), *disc. review allowed*, 331 N.C. 121, 414 S.E.2d 765 (1992). Reasonable suspicion is determined by the totality of the

circumstances. *Reid,* 104 N.C. App. at 342, 410 S.E.2d at 72, (quoting *Alabama v. White,* 496 U.S. 325, 110 L. Ed. 2d 301 (1990)). The existence of reasonable suspicion of criminal activity is determined by trained police officers from objective facts and circumstantial evidence. *State v. McDaniels,* 103 N.C. App. 175, 180, 405 S.E.2d 358, 361, *disc. review on additional issues denied,* 329 N.C. 791, 408 S.E.2d 527 (1991), *decision aff'd,* 331 N.C. 112, 413 S.E.2d 799 (1992). By the standards set out by the Supreme Court and this Court, the stop of the car in which defendant was a passenger was not an arrest. The police were making an investigative stop of the vehicle to clarify the discrepancies between defendant's story and her actions. The specific articulable facts that were the basis of the officers' reasonable suspicion of illegal activity were: (1) defendant was observed in a public transportation area where controlled substances are commonly trafficked; (2) upon questioning, defendant had claimed she was travelling alone; (3) she claimed she did not know the man to whom she had been speaking; (4) she constantly looked over at the man being questioned by Officer Ferrell, and (5) subsequently, she left with that very man in a car. These specific, articulable facts justified the subsequent stop of the vehicle.

So long as a stop is investigative, the police only need to have a reasonable suspicion. *Reid, supra.* However, if the police conduct a full search of an individual without a warrant or consent, they must have probable cause, and there must be exigent circumstances. *State v. Mills,* 104 N.C. App. 724, 730, 411 S.E.2d 193, 196 (1991). Whether there were exigent circumstances need not be considered because probable cause to search did not exist. The United States Supreme Court compared the difference between investigative stops and situations which required probable cause in *Florida v. Royer,* 460 U.S. 491, 75 L. Ed. 2d 229 (1983).

> Detentions may be "investigative" yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest.

*Id.* at 499, 75 L. Ed. 2d at 237.

STATE v. PITTMAN

[111 N.C. App. 808 (1993)]

This Court has determined that probable cause to search exists when a "reasonable person acting in good faith could reasonably believe that a search of the defendant would reveal the controlled substances sought which would aid in his conviction." *Mills*, 104 N.C. App. at 730, 411 S.E.2d at 196. At the time Officer Ferrell called for a female officer to conduct a search and subsequently ordered the defendant to submit to a search, there was no probable cause to search, at best only reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 904 (1968), limited the scope of searches so that they are strictly tied to the factors which give rise to the search. In this case, the officer acted on what seemed to be an attempt by the defendant to deny knowing the man with whom she left. A reasonable person could not reasonably believe that a full body search, based on this one factor, would reveal controlled substances, therefore no probable cause existed. *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *See also Sibron v. New York*, 392 U.S. 40, 62, 20 L. Ed. 2d 917, 934 (1968) (finding that the inference of criminal activity based on mere association with known drug addicts is not sufficient for a finding of probable cause to search).

The State asserts that the police had probable cause to search the defendant based on information gathered from the questioning of the defendant during the second stop. However, Officer Ferrell called for a female officer specifically to conduct a search of the defendant, and he did so before the second stop and further questioning of the defendant began. When the decision to search the defendant was made, the police were working from the limited information gathered from the first stop, and at that point there was no probable cause. Assuming *arguendo* that the decision to search was made subsequent to the second stop, we also find insufficient evidence of probable cause to permit a search of the defendant's person.

Lastly, defendant contends that three of the lower court's findings of fact are not supported by the record. Defendant failed to properly preserve for review by this Court these remaining assignments of error. N.C.R. App. P. 10(b) (1975).

For the reasons stated above, we conclude that the search of the defendant's person was conducted in violation of the right

STATE v. PITTMAN

[111 N.C. App. 808 (1993)]

of the defendant to be free from any unreasonable searches as guaranteed by the Fourth Amendment, the North Carolina Constitution, and the North Carolina General Statutes. Accordingly, the order denying defendant's motion to suppress is reversed and the judgment entered upon defendant's plea of guilty is vacated.

Reversed.

Judge WELLS concurs.

Judge McCRODDEN concurs in the result with a separate opinion.

Judge McCRODDEN concurring in the result.

I concur with the majority on the disposition of the issues concerning the two investigatory stops. As to the issue of the search of the defendant, however, I concur only in the result. The majority cites no authority, and indeed my research can disclose no case law, for the proposition, implied by the majority, that, for the purpose of determining the existence of probable cause for a warrantless search, a search begins when law enforcement officers make the decision to search. The proper time to determine whether there is probable cause to justify a warrantless search is immediately before law enforcement officers begin the actual search because, at any point prior to that, the officers may abandon the search, and the target of the aborted search would have suffered no constitutional harm. To the extent that the majority opinion implies that we measure probable cause at an earlier point in time, I disavow it.

I believe that the officers in this case in actuality arrested defendant without probable cause immediately prior to searching her. I would therefore find the search in violation of defendant's Fourth Amendment right and agree with the majority that the trial court should have granted defendant's motion to suppress.